IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

COMBUSTION ENGINEERING CARIBE,
INC., et al.,

    Plaintiffs,

    v.

GEO P. REINTJES CO., INC., et al.,

    Defendants.

CIVIL NO. 02-2466 (RLA)

**ORDER GRANTING INTERVENTION
AND TRANSFERRING CASE TO THE
U.S. DISTRICT COURT, WESTERN DISTRICT OF MISSOURI
CASE NO. 05-0345-CV-ODS**

At this time we must determine whether or not ST. PAUL FIRE & MARINE INSURANCE COMPANY ("ST. PAUL") should be allowed to intervene in these proceedings which petition was opposed by the two remaining parties to this action at the time the request was made.

### I. BACKGROUND

Briefly, this action arose out of a contract for construction work to be performed at a power plant in Guayama, Puerto Rico. Plaintiffs, ALSTOM POWER, INC. and ALSTOM CARIBE, INC. ("ALSTOM")[1] contracted defendant, GEO. P. REINTJES CO. ("REINTJES"), to carry out part of the work. ST. PAUL provided both payment and performance bonds in connection with REINTJES' contracted responsibilities.

REINTJES entered into an Indemnity Agreement with ST. PAUL for any damages or costs incurred under the bonds. On or about

---

[1] Formerly known as COMBUSTION ENGINEERING CARIBE, INC.

**CIVIL NO. 02-2466 (RLA)**                                                                 **Page 2**

December 8, 1992, REINTJES and other related entities (collectively "Indemnitors") executed General Agreement of Indemnity ("GAI") whereby they jointly and severally obligated themselves to, *inter alios*, (1) indemnify ST. PAUL, as surety, from all losses, costs and expenses incurred by ST. PAUL as a result of the issuance of any bonds on behalf of REINTJES, as principal,[2] and (2) post collateral security to cover any losses, costs or expenses incurred by ST. PAUL as a result of issuing bonds on REINTJES' behalf.[3] The GAI further states that in the event of default, Indemnitors assigned to ST. PAUL the rights and interests of REINTJES in any funds due on any bonded project.[4]

Lastly, in its introductory paragraph, the GAI specifically provided that it was being executed as a condition precedent for ST. PAUL to issue the corresponding bonds.

Subsequent to the execution of the GAI, a Payment Bond and a Performance Bond were issued by ST. PAUL each in the penal amount of $4,141,448.00 in connection with the installation of refractory materials in boilers on a power plant project in Guayama, Puerto Rico. The Payment Bond was intended to guarantee payment to REINTJES' subcontractors and suppliers whereas the Performance Bond guaranteed completion of the work by REINTJES.

---

[2] GAI ¶ 2.

[3] GAI ¶ 3.

[4] GAI ¶ 4(c).

**CIVIL NO. 02-2466 (RLA)**                                                                 **Page 3**

ST. PAUL alleges that REINTJES has refused to honor its obligations under the GAI despite its repeated entreaties.

The relationship between ALSTON and REINTJES eventually soured and culminated in suits filed by ALSTON against both REINTJES and ST. PAUL seeking damages from REINTJES purportedly caused by a breach of contract, delays in completion of work, as well as defective design and installation of refractory materials. Plaintiffs further called for a declaratory judgment determining the validity of the bonds issued by ST. PAUL as well as the surety's obligation to pay thereunder.

REINTJES counter-claimed against plaintiffs[5] for failure to pay invoiced payments and for extra labor charges and overtime purportedly resulting from delays and disruptions in the refractory work. ST. PAUL also filed a counter-claim against plaintiffs challenging the validity of the bonds.

In December 2003, ST. PAUL negotiated ALSTOM's claim against the Performance Bond in the amount of $2,925,000.00 which caused ALSTOM to drop its claims against REINTJES and ST. PAUL. However, REINTJES continued to prosecute its counter-claims against ALSTOM and disclaimed any obligation to reimburse ST. PAUL.

---

[5] A parallel proceeding was previously initiated by REINTJES in the U.S. District Court for the Western District of Missouri, Geo P. Reintjes Co. Inc. v. Alstom Power, Inc., Case No. 02-0657-CV-W-GAF. That action was subsequently transferred to this District and the parties realigned under a single consolidated pleading.

**CIVIL NO. 02-2466 (RLA)**                                                          **Page 4**

Thereafter, ST. PAUL also settled the claims against the Payment Bond asserted on behalf of JR INSTALLATION SALES & SERVICE, INC., a REINTJES subcontractor, for $465,000.00.

In April 2005, ST. PAUL instituted a suit against REINTJES in the Western District of Missouri seeking indemnification for the sums expended in the ALSTOM settlement.[6]

After intense mediation efforts, on June 15, 2006, ALSTON and REINTJES advised the court that they had reached an agreement to settle their differences in this case which, at the time, were the only remaining claims in these proceedings. Pursuant to their settlement agreement, ALSTON would pay REINTJES $2,000,000.00.

On July 13, 2006, ST. PAUL moved to intervene in this action. In its tendered complaint, petitioner sought a declaratory judgement regarding REINTJES' duty to collateralize ST. PAUL for the losses incurred relative to the bonds issued on behalf of REINTJES as well as its equitable subrogation rights resulting from having paid claims asserted against the aforementioned bonds.

Additionally, ST. PAUL prayed for an order proscribing REINTJES from receiving any funds in connection with the disputes in this

---

[6] ST. PAUL demands payment of the following sums:

| | |
|---|---|
| Settlement with JRI | $   465,000.00 |
| Settlement with ALSTON | $2,925,000.00 |
| Expert Fees re: JRI claim | $    10,000.00 |
| Expenses | $   547,896.00 |
| **TOTAL** | **$3,947,896.00** |

**CIVIL NO. 02-2466 (RLA)**                                                                    **Page 5**

litigation and ordering REINTJES to pay into the court any such monies received in order "to prevent the dissipation of the funds until there has been a judicial determination in [its] indemnity lawsuit against Reintjes regarding St. Paul's entitlement to the funds." Motion for Leave to Intervene (docket No. 246) p. 2.

On July 28, 2006, we approved the Settlement Agreement entered into between ALSTOM and REINTJES, denied the intervention and ordered that the settlement award be transferred to the Missouri court for eventual disposition in the case instituted by ST. PAUL.

Our denial for intervention was reversed on appeal with instructions to consider ST. PAUL's petition anew.

## II. **INTERVENTION**

ST. PAUL argues that it is entitled to intervene in these proceedings as a matter of right pursuant to Rule 24(a)(2) Fed. R. Civ. P. or in the alternative, under the provisions for permissive intervention under Rule 24(b)(2).[7]

In pertinent part, Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical

---

[7] Because we find the arguments under Rule 24(a) dispositive, there is no need to discuss the applicability of the provisions for permissive intervention under Rule 24(b).

> matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Hence, a party wishing to intervene based on the aforementioned provision "must show that (1) it timely moved to intervene; (2) it has an interest relating to the property or transaction that forms the basis of the ongoing suit; (3) the disposition of the action threatens to create a practical impediment to its ability to protect its interest; and (4) no existing party adequately represents its interests." B. Fernandez & Hnos., Inc., 440 F.3d 541, 544-45 (1st Cir. 2006); Public Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998); Caterino v. Barry, 922 F.2d 37, 39 (1st Cir. 1990).

All four elements must be met in order to qualify for intervention. B. Fernandez, 440 F.3d at 545; Patch, 136 F.3d at 204; Caterino, 922 F.2d at 39.

In applying these factors, the court must utilize a "holistic, rather than a reductionist, approach" keeping in mind "a commonsense view of the overall litigation." Patch, 136 F.3d at 204. "The inquiry under Rule 24(a)(2) must focus on the particular facts and procedural posture of each application." 6 James Wm. Moore, *et al.*, Moore's Federal Practice ¶ 24.03[1][b]. However, "[b]ecause small differences in fact patterns can significantly affect the outcome, the very nature of a Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions." Patch, 136 F.3d at 204.

**CIVIL NO. 02-2466 (RLA)**                                              **Page 7**

### A. TIMELINESS

REINTJES argues that the petition is untimely because, at the time it was made, there were no claims pending in this action based on the settlement of its counter-claims with the plaintiffs. Additionally, it points to the fact that even though ST. PAUL was a party to these proceedings since 2002 and was aware of REINTJES' demands against plaintiffs all along it failed to take any course of action to defend its rights in this case until now.

It is important to note that the "court's determination of timeliness is case-specific...." The Cadle Co. v. Schlictmann, Conway, Crowley & Hugo, 338 F.3d 19, 21 (1st Cir. 2003) and "is to be determined from all the circumstances." Flemming v. Lind-Waldock & Co., 922 F.2d 20, 25 (1st Cir. 1990) (citation and quotation marks omitted). "The requirement of timeliness must be considered within the factual context of each case, including the purpose for which the intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the possibility of prejudice to the exiting parties." Moore ¶ 24.21[1] (footnote omitted).

"The requirement that a motion to intervene be timely is not a tool of retribution to punish tardiness. Rather, the requirement is meant to protect the rights of the existing parties to an action." Moore ¶ 24.21[1] (footnote omitted).

"There is no bright-line rule delineating when a motion to intervene is or is not timeous. Instead, courts must decide the

question on a case by case basis, examining the totality of the relevant circumstances. One highly relevant circumstance implicates the status of the case at the time when intervention is attempted. The more advanced the litigation the more searching the scrutiny which the motion must withstand." Banco Popular de P.R. v. Greenblatt, 964 F.2d 1227, 1230-31 (1st Cir. 1992) (internal citations omitted).

"The stage of the proceeding at which an application to intervene is made is inherently tied to the issue of potential prejudice to the original parties resulting from the intervenor's delay." Moore ¶ 24 .21[2] (footnotes and internal marks omitted).

In order to rule on the timeliness factor, the court must consider: "(1) the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted, (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiocratic circumstances which, fairly viewed, militate for or against intervention." Banco Popular, 964 F.2d at 1231; Caterino, 922 F.3d at 39; Flemming, 922 F.2d at 25.

### (1) Knowledge

"[T]he law contemplates that a party must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists." Banco Popular, 964 F.2d at 1231. "The first

factor focuses on actual or constructive knowledge of possible jeopardy.... a party must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists." Banco Popular, 964 F.3d at 1231. "Once a potential intervenor has acquired such knowledge, the tempo of the count accelerates. The applicant must then act reasonably promptly." *Id.*

Based on the evidence in record, it is uncontested that ST. PAUL moved quickly to preserve its rights upon learning of the ALSTON-REINTJES settlement. The two remaining parties advised the court of the having agreed to resolve the controversy pertaining to the claims over the Bonded Project via a Joint Status Report filed on June 15, 2006. "[L]ate June 2006, St. Paul came to learn that the settlement entails Alstom paying an undisclosed sum of money to REINTJES, among other terms that apparently remain confidential"[8] and the request for intervention was filed on July 13, 2006.

Prior thereto, there was no imminency for ST. PAUL to intervene. This is so because the crucial event is not mere existence of a lawsuit but rather, the point in time when it learned that its interests would be affected by the litigation.

> Knowledge of the pendency of the litigation is not the relevant date for this factor, because it would encourage intervention before the applicant had sufficient knowledge

---

[8] Declaration of JANICE S. SMITH ¶ 21, attached to Motion for Leave to Intervene (docket No. 246).

regarding the potential ramifications of the action on the applicant's interests. It would also prohibit intervention in cases in which the applicant excusably failed to understand the significance of the suit when it was filed. **Thus, constructive knowledge of an action's impact on an applicant' interests, rather than knowledge of the pendency of the action,** is the relevant date used to determine timeliness.

Moore ¶ 24.21[3] (emphasis ours).

### (2) Prejudice to Existing Parties

"The relevant focus under the second timeliness factor is *only* the prejudice that may result from the applicant's delay in filing its motion after it reasonably should have known of the potential impact of the action on its interest." Moore ¶ 24.21[3] (italics in original).

Apart from arguing that there are no controversies remaining in this action REINTJES has not articulated any specific prejudice that would befall upon it should intervention be allowed to proceed. However, the fact that the settlement submitted by the remaining parties will dispose of the only outstanding claims is not dispositive in this case. Intervention may be allowed even subsequent to the entry of judgment. *See*, Moore ¶ 24.21[2]

In this case ST. PAUL is not seeking to set aside the terms of the settlement agreement disposing of the remaining claims between ALSTON and REINTJES but rather, its interests lie precisely on the

consummation of the same. Thus, the intervention would not prove disruptive of the proceedings. *See, i.e.*, Banco Popular, 964 F.3d at 1232 ("As a general rule, prejudice to existing parties is less likely in a case where post-judgment intervention does not seek to disturb the core judgment, but merely to reconfigure an ancillary term.")

### (3) Prejudice to Applicant

It is also necessary to examine the prejudice to the applicant in the event that its request is rejected. As part of this analysis, "we [must] determine whether the movant had intervention been allowed, would have enjoyed a significant probability of success on the merits." Banco Popular, 964 at 1232 (citations and internal marks omitted). We find that there is ample uncontested evidence submitted by the putative intervenor documenting its claims for collateralization as well as its subrogation rights.

Further, ST. PAUL has proffered evidentiary support for its irreparable harm if it is not allowed to intervene in this action in order to preserve its rights over the settlement funds. Petitioner points to the fact that REINTJES is already in default of its obligations and that there is a possibility of the settlement monies vanishing. Further, it posits that this may be the only asset

**CIVIL NO. 02-2466 (RLA)** **Page 12**

available for reimbursing its significant losses related to the Bonded Project as claimed in the complaint.[9]

### (4) Exceptional Circumstances

This is a breach of contract case involving two private parties. It does not involve any exceptional circumstances nor does it affect matters of public interest or social impact which the court should take into consideration when making its ruling.

### B. INTEREST RELATING TO THE PROPERTY OR TRANSACTION

Other than arguing that the petition for intervention was untimely and that there are no pending claims in these proceedings, REINTJES does not specifically address this element.

"The goal of the interest requirement is to dispose of lawsuits by involving as many concerned parties as is compatible with efficiency and due process." Moore 24[2][a]. "While the type of interest sufficient to sustain intervention as of right is not amenable to precise and authoritative definition, a putative intervenor must show at a bare minimum that it has 'a significantly protectable interest.'" Patch, 136 F.3d at 205 (*citing* Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580, 589 (1971)).

"[T]here is no authoritative definition of precisely what kinds of interests satisfy the requirements of the rule... The goal of the

---

[9] *See*, Declaration of JANICE S. SMITH ¶¶ 22, 23 and 26 attached to Motion for Leave to Intervene (docket No. 246).

interest requirement is to dispose of lawsuits by involving as many concerned parties as is compatible with efficiency and due process." Moore ¶ 24.03[2][a] (footnotes omitted). However, "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." Patch, 136 F.3d at 205.

This requirement will be interpreted broadly. *See*, Daggett v. Comm'n on Gov't Ethics and Election Practices, 172 F.3d 104, 110 (1st Cir. 1999) (rejecting narrow reading of "property or transaction" provision).

We find this requirement is easily met in the situation before us. ST. PAUL's interests over the settlement funds payable to REINTJES derive both from petitioner's right to collateralization contained in the GAI as well as from its subrogation rights arising as a result of having paid claims under the terms of the bonds both which are intimately connected to the events which lead to the filing of this action.

### C. IMPAIR ABILITY TO PROTECT INTEREST

Having established a sufficient interest in the subject matter of this action, petitioner must also prove that its ability to protect its interests will be impaired if not allowed to intervene.

As previously noted, based on the evidence proffered ST. PAUL is susceptible of withstanding significant losses, costs and expenses incurred from having issued the bonds on behalf of REINTJES, the

**CIVIL NO. 02-2466 (RLA)** **Page 14**

subsequent violations to the obligations assumed by the Indemnitors under the GAI and its indemnity rights unless it may prosecute those claims at this time.

### D. ADEQUATE REPRESENTATION BY EXISTING PARTIES

REINTJES does not address this issue nor do we find that it merits much discussion. The interests of both ALSTON and REINTJES at this stage of the proceedings are not compatible with those asserted by ST. PAUL. To the contrary, the would-be intervenor paid ALSTON claims premised on REINTJES' default of its obligations under the bonds and is now seeking settlement monies payable by ALSTON in connection with REINTJES's counter-claims. Additionally, by demanding payment from REINTJES petitioner has placed itself in opposite sides vis à vis this party.

Accordingly, it is safe to conclude that ST. PAUL's interests are not adequately represented by the existing parties to the litigation.

### III. CONCLUSION

Based on the foregoing, the Motion to Intervene is **GRANTED**.

It is further ORDERED that this action be **TRANSFERRED** to the Western District of Missouri, for consolidation with <u>Geo P. Reintjes Co. Inc. v. Alstom Power, Inc.</u>, Case No. 02-0657-CV-W-GAF.

Plaintiffs are deemed to have fulfilled their obligations under the terms of the Settlement Agreement with REINTJES. Accordingly,

**CIVIL NO. 02-2466 (RLA)** **Page 15**

the Final Judgment issued on July 28, 2006 (docket No. 260) is reinstated.

    IT IS SO ORDERED.

    San Juan, Puerto Rico, this 24th day of May, 2007.

                                    S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                               United States District Judge